PADOVANO, J.
The defendant appeals his conviction for unlawful possession of Methadone. We conclude that the trial court erred in admitting information from a computer database offered by the state to show that there was no record of a medical prescription for the drug. For the reasons that follow, we reject the state’s argument that the database qualified for admission under the hearsay exception for market reports and commercial publications. Because the database directly refuted defense testimony that the drug had been prescribed, and was therefore lawful, we are unable to conclude that the error was harmless.
As a result of a traffic stop on May 19, 2012, the defendant was charged with five criminal offenses: unlawful possession of Xanax (Count 1); unlawful possession of Methadone (Count 2); resisting an officer without violence (Count 3); driving with a suspended license (Count 4); and driving *1018 with an improper vehicle tag (Count 5). The officers found the Xanax and Methadone pills in a small bottle attached to the key ring for the vehicle. The defendant told the officers that the Xanax and Methadone pills belonged to his girlfriend, Chelsea Edwards, and that she had prescriptions for them.
The defendant argued at trial that his possession of the drugs was lawful because they had been prescribed by a doctor. The parties agreed that this would be a valid affirmative defense to the drug charges, but the state disputed the existence of Ms. Edwards’ prescription, at least for the Methadone pills. Prior to trial, the state moved to exclude any reference to the Methadone prescription on the ground that it was not provided in discovery and on the ground that it would be hearsay. The trial court ruled Ms. Edwards could testify that she had been given a prescription for Methadone and that it would be up to the jury to decide whether to believe her testimony if the prescription could not be produced.
Chelsea Edwards was the sole witness for the defense. The state and defense stipulated that Ms. Edwards had three prior felony convictions, and that fact was disclosed to the jury. Ms. Edwards testified that she and the defendant lived together and shared the use of a car. They also shared the use of a single set of car keys on which she kept a small pill bottle containing a few doses of her medications, Xanax and Methadone. Ms. Edwards stated that she had taken both drugs daily until she switched to a new physician, Doctor Laski. She testified that the pills found in the defendant’s possession belonged to her and that she allowed the defendant to use the car keys with the pill bottle attached.
Ms. Edwards identified her prescription for Xanax, and it was introduced as a defense exhibit. However, she could not produce the prescription for Methadone. She testified that she got the Methadone prescription from Dr. Findley and that her last prescription had been filled about two months before the defendant’s arrest. The Methadone was not supplied by Wal-greens, as her Xanax had been, but rather by a pharmacy on 8th Street that had since closed.
On rebuttal, the state proffered the testimony of Lorrina Hall Abramowitz, a detective with the Jacksonville Sheriffs Office and a specialist in prescription drug fraud investigations. Detective Abramow-itz stated that she had examined a data compilation known as the Electronic-Florida Online Reporting of Controlled Substance Evaluation Program. This database, more commonly identified by the acronym E-FORCSE, is maintained by the Florida Department of Health. Licensed pharmacies in Florida are required to report prescriptions filled for certain controlled substances for inclusion in the database and if they fail to report them, they are subject to disciplinary action.
The state moved to admit the information in the E-FORCSE database, to show that there were no entries of a prescription for Methadone by Dr. Findley for Chelsea Edwards. The prosecutor explained that the absence of this record would refute Ms. Edwards’ assertion that she had received a prescription for Methadone one to two months before the defendant’s arrest.
The defense objected to admission of the database on the ground that it was hearsay, and the argument that followed focused on various exceptions to the hearsay rule. Defense counsel argued that the database could not be admitted under the public records exception and that it did not qualify as a business record because Detective Abramowitz was not the custodian. *1019 The trial court agreed with these arguments but ultimately decided to admit the database under the exception in section 90.803(17), Florida Statutes (2012), for market reports and commercial publications. The defense objected to the application of this exception as well.
Detective Abramowitz testified that there was no record of a prescription for Methadone for Chelsea Edwards, and the state used this evidence in its closing argument to refute Ms. Edwards’ testimony that she had a prescription. The jury found the defendant not guilty of possession of Xanax but guilty as charged of the remaining four counts. He then appealed to this court, challenging only his conviction for possession of Methadone.
The Florida Evidence Code provides that hearsay evidence is not admissible, except as provided by statute. See § 90.802, Fla. Stat. (2012). Among the exceptions listed in the Code is a provision that allows the admission of market reports and commercial publications. This exception is set out in section 90.803(17), which states:
Section 90.803 Hearsay Exceptions; Availability of Declarant immaterial.
The provision of section 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness.
[[Image here]]
(17) MARKET REPORTS, COMMERCIAL PUBLICATIONS — Market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations if, in the opinion of the court, the sources of information and method of preparation were such as to justify their admission.
The justification for this exception is that public acceptance depends on the reliability of the information provided in the report or compilation, and thus the motivation for accuracy is high. See Kenneth S. Broun, 2 McCormick on Evidence § 321 at 395 (6th ed. 2006). As Professor Ehrhardt has explained, this evidence is reliable “because those who publish the compilations know that if the publications are inaccurate they will no longer be consulted and because they generally have no motive to falsify.” See Charles W. Ehrhardt, Florida Evidence § 803.17, at 977 (2013 ed.).
In this appeal, we must decide whether the exception set out in section 90.803(17) was properly applied. Trial judges have discretion to rule on some kinds of evidence issues, but whether a statement falls within the statutory definition of hearsay is a question of law. See Powell v. State, 99 So.3d 570 (Fla. 1st DCA 2012); Burkey v. State, 922 So.2d 1033 (Fla. 4th DCA 2006). Likewise, whether evidence is admissible under an exception to the hearsay rule is a question of law. See Chavez v. State, 25 So.3d 49 (Fla. 1st DCA 2009). Assuming the evidence falls within the trade reports exception, the trial court has discretion under section 90.803(17) to decide whether “the information and method of preparation were such as to justify [its] admission.” See Health Options, Inc. v. Palmetto Pathology Servs., P.A., 983 So.2d 608, 616 (Fla. 3d DCA 2008). However, the method of compiling and maintaining the database is not at issue here. The controversy in this case pertains to the scope of the statutory exception in section 90.803(17), and that is an issue of law. Thus, we review the trial court’s decision by the de novo standard of review.
We conclude that the E-FORCSE database does not qualify as a “market report” or “commercial publication” under section *1020 90.803(17) for several reasons, not the least of which is that it does not fall within the definition in the text of the statute. Section 90.803(17) includes “market quotations, tabulations, lists, directories, or other published compilations.” This language plainly requires that the evidence be published to qualify under the exception.[1] Black’s Law Dictionary defines “publish” as “[t]o distribute copies (of a work) to the public.” Black’s Law Dictionary 1268 (8th ed. 2004). The E-FORCSE database is not “published” in the ordinary sense of the term because it is not available to the public. Access to the database is limited to authorized employees of the Department of Health and certain law enforcement officers who have been expressly authorized by the Department to use it.
It would be difficult to conclude that the E-FORCSE database falls within the scope of section 90.803(17), even if it did meet the publication requirements of the statute. We could say in the most technical sense that the database is a “list” and we could also say in the most general sense that Detective Abramowitz is a “person” who is engaged in a “particular occupation.” But if we interpret these words and phrases in the context in which they were used, they cannot be interpreted to include a database such as this within the class of materials identified in the statute.
The title of the statute expressly states that the exception applies to market reports and commercial publications. We acknowledge that the text of the statute contains the general phrase “or other published compilations” but we do not construe this phrase to authorize the admission of the E-FORCSE database. The canon of statutory interpretation known as ejusdem generis holds that “when a general phrase follows a list of specifics, the general phrase will be interpreted to include only items of the same type.” State v. Hearns, 961 So.2d 211, 219 (Fla.2007); see also Graham v. Haridopolos, 108 So.3d 597 (Fla.2013); Fayad v. Clarendon Nat’l Ins. Co., 899 So.2d 1082 (Fla.2005). Applying this canon, we conclude that the phrase “or other published compilations” refers to other reports of a like kind; that is, reports that are similar in nature to market reports or commercial compilations. It does not refer to a report of any kind merely because it could be characterized as a compilation. The E-FORCSE database is not a market report or commercial compilation and, unlike all of the other items specifically identified in the statute, it is not used in trade or commerce.
We have no doubt that Detective Abra-mowitz relied on the information in the database, but it is important to note that she used the database not as proof of the facts it revealed, but rather as an investigative tool. She testified that she did not rely solely on the information in the database but that she used it as “part of an investigation.” In this respect the database is unlike a book that compiles used car values or a newspaper that lists stock quotations. The information contained in those kinds of reports is relied on for the accuracy of the matter reported. In contrast, law enforcement officers rely on the E-FORCSE database not for the accuracy of the matters reported, but rather as a justification for further inquiry.
Perhaps the information in the database would have some value in explaining why a law enforcement officer investigated one suspect rather than another, but it does *1021 not have the kind of independent eviden-tiary value that could justify its admission under the trade reports exception. It is one thing to say that the information in the database creates a founded suspicion that justifies an investigation, but quite another to say that it is proof of a fact. It is not intended as proof of a fact and law enforcement officers do not rely on it in that way. Yet that is how it was used in this case. The admission of the database effectively elevated investigative information to the status of established fact.
We are unable to characterize the erroneous admission of the database as harmless error. The defendant’s sole contention was that his possession of the drugs was lawful because they had been prescribed by a doctor. He produced a prescription for the Xanax pills and the jury acquitted him of that offense. Obviously, the jury understood the argument. Ms. Edwards testified that she also had a prescription for the Methadone pills, but she could not produce it. The state then presented the database showing that there was no record of the prescription. We have no way of knowing what the verdict might have been had Ms. Edwards’ defense testimony not been impeached in this way.
For these reasons, we conclude that the trial court erred in allowing the state to introduce on rebuttal the E-FORCSE database records. Because the error was not harmless, we reverse the judgment and remand the case for a new trial. Our disposition of the case on this point makes it unnecessary to consider any of the other arguments the defendant raised in the appeal.
Reversed and remanded.
VAN NORTWICK, J., concurs.
ROWE, J., dissents with opinion.

. We note that section 90.803(17), Florida Statutes, is more narrow in scope than its federal counterpart, rule 803(17) of the Federal Rules of Evidence. The federal rule does not require the report or compilation to be published.