2014 COA 132

**The PEOPLE of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,**

v.

**Lisa Lynne HARD, Defendant–Appellant and Cross–Appellee.**

**Court of Appeals No. 12CA2167**

Colorado Court of Appeals, Div. V.

Announced October 9, 2014

Rehearing Denied November 26, 2014

Arapahoe County District Court No. 11CR2497, Honorable John L. Wheeler, Judge.

John W. Suthers, Attorney General, Ethan E. Zweig, Assistant Attorney General, Denver, Colorado; George Brauchler, District Attorney, Rich Orman, Senior Deputy District Attorney, Centennial, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Britta Kruse, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by JUDGE J. JONES

¶ 1 Defendant, Lisa Lynne Hard, appeals the judgment of conviction entered on jury verdicts finding her guilty of possession of a schedule II controlled substance and possession of a schedule III controlled substance.

¶ 2 The People cross-appeal defendant's sentence as to her conviction for failure to present proof of insurance.

¶ 3 We vacate defendant's conviction for possession of a schedule II controlled substance, reverse her conviction for possession of a schedule III controlled substance, vacate her sentence in part, and otherwise affirm.

## I. Background

¶ 4 According to the prosecution's evidence, State Trooper Blake Hancey pulled over defendant's car after seeing that defendant was speeding and not wearing a seat belt. He asked to see her driver's license, vehicle registration, and proof of insurance. She provided only her driver's license.

¶ 5 During the traffic stop, Trooper Hancey noticed that defendant smelled faintly of alcohol, her eyes were bloodshot and watery, her speech was rapid and slurred, and she was squirming in her seat. He asked her why she was not wearing a seat belt, and she said that she was on her way to the emergency room because she was having back spasms. He also asked whether she had been drinking and whether she was taking any medications. She responded that she had "had a beer earlier, and that she had taken a half a Xanax earlier."

¶ 6 Trooper Hancey then checked whether defendant had any outstanding warrants for her arrest, and discovered that she had a warrant for failure to appear on a charge of driving under the influence. He then asked whether she would consent to perform roadside maneuvers. She refused, and Trooper Hancey arrested her.

¶ 7 Incident to the arrest, Trooper Hancey searched defendant and found ten pills in her pants pockets. Defendant said that she had

prescriptions for the pills, but that she did not have the prescriptions with her. Inside defendant's car, Trooper Hancey also found an empty twenty-four-ounce beer can and another unopened beer can.

¶ 8 Before taking defendant to the police station, Trooper Hancey accessed the website Drugs.com to identify the pills. He identified one pill as oxycodone, a controlled substance, and seven of the pills as alprazolam, another controlled substance.[1] He identified the other two pills as naproxen, an over-the-counter medication. He did not subsequently submit the pills for any confirmatory chemical testing.

¶ 9 Trooper Hancey then took defendant to the Arapahoe County Jail, where she consented to a blood test. The test showed that her blood-alcohol content was .039. No drugs were detected.

¶ 10 As relevant here, the People charged defendant with possession of a schedule II controlled substance (oxycodone), possession of a schedule III controlled substance (alprazolam),[2] driving under the influence, failure to present proof of insurance, and speeding.

¶ 11 A jury acquitted defendant of the driving under the influence charge, but found her guilty of the other charges. The district court sentenced her to two years of probation for the drug possession convictions, and imposed monetary fines for the other convictions.

¶ 12 On appeal, defendant challenges only her drug possession convictions.

## II. Defendant's Appeal

¶ 13 Defendant contends that (1) the district court erroneously admitted testimonial hearsay; (2) there was insufficient evidence to support her convictions for possession of controlled substances; (3) the district court erroneously admitted expert testimony; and (4) the mittimus incorrectly identified one of her convictions.

¶ 14 We agree with defendant's first contention, agree with the second as to the conviction for possession of a schedule II controlled substance, disagree with the second as to possession of a schedule III (actually IV) controlled substance, and do not address her other two contentions.

## A. Hearsay Evidence

¶ 15 Defendant first contends that (1) the district court erred by admitting hearsay testimony about information Trooper Hancey obtained from Drugs.com and (2) the admission of that evidence violated her state and federal confrontation rights. We agree with defendant that the Drugs.com evidence was inadmissible hearsay.[3]

### 1. Procedural Background

¶ 16 Before trial, defendant's counsel moved to exclude Trooper Hancey's testimony about his Drugs.com search results. Counsel argued, as relevant here, that the evidence was inadmissible hearsay and that its admission would violate defendant's right to confrontation.

¶ 17 The prosecutor argued in response that the evidence was admissible under CRE 803(17), the hearsay exception for market reports and commercial publications. Specif-

1. Oxycodone is the generic name of Percocet; alprazolam is the generic name of Xanax.

2. The People concede on appeal that alprazolam is actually a schedule IV controlled substance, not a schedule III controlled substance. § 18–18–206(b)(I), C.R.S.2014.

3. We disagree with defendant, however, that her confrontation rights were implicated in this case. The information on Drugs.com is not testimonial for purposes of the Sixth Amendment's Confrontation Clause, as it was not created primarily for the purpose of establishing facts relevant to later criminal prosecution. *See Raile v. People*, 148

P.3d 126, 130 (Colo.2006) ("When circumstances objectively indicate that the primary purpose of the interrogation is either to elicit statements that establish or prove past events, or to elicit statements that are potentially relevant to a later criminal prosecution, the statements elicited are testimonial." (citing *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006))). We do not address defendant's contention regarding the state confrontation clause because she did not preserve it by making an express objection based thereon in the district court. *Martinez v. People*, 244 P.3d 135, 139 (Colo.2010); *People v. Rodriguez*, 209 P.3d 1151, 1156 (Colo.App.2008).

ically, the prosecutor argued that information from Drugs.com fits within the exception because Drugs.com is a public source of information on which police officers rely to identify drugs.

¶ 18 Defendant's counsel replied that the information from Drugs.com is insufficiently reliable to be admissible under CRE 803(17). Specifically, defendant's counsel pointed to the fact that Drugs.com disclaims the accuracy of the information on its website, and argued that a police officer's testimony that he relies on a given source of information is insufficient to establish the reliability of that source.

¶ 19 The district court ruled first that the Drugs.com evidence was not testimonial and that it therefore did not implicate defendant's confrontation rights. The court further determined that information from Drugs.com is sufficiently reliable to be admissible under CRE 803(17), reasoning that "literally scores of judicial opinions rely independently on [D]rugs.com for both the description of drugs, drug side effects, and drug interactions." Thus, the court ruled that it would allow testimony about the Drugs.com search results, assuming Trooper Hancey could first lay a proper foundation.

¶ 20 At trial, Trooper Hancey testified, over objection, that Drugs.com is a nationally recognized website and that he and other law enforcement officials rely on Drugs.com to identify prescription drugs. He then described how the search function on Drugs.com is used:

> On [Drugs.com], [it] allows you to put in specific identifiers. The one that I typically use that's been the easiest is simply the number rather than deal with the color and shape. So I'll put in the number or numbers into the search function. That will give—some cases I've seen it's given multiple pills with similar markings and you're able to determine by simply size, shape and color on whether or not it is the same marking as the pill that I'm looking at.

He testified that Drugs.com indicated that the pills in defendant's possession were oxycodone and alprazolam. Specifically, he said that the numerical markings, shape, and col-or of the pills matched those of oxycodone and alprazolam, respectively, as shown on the website.

¶ 21 On cross-examination, Trooper Hancey said that he is not a drug recognition expert, and that he had not requested any confirmatory chemical testing of the pills.

### 2. Standard of Review and Applicable Law

¶ 22 We will not disturb a district court's evidentiary rulings absent a showing of an abuse of discretion. *Davis v. People,* 2013 CO 57, ¶ 13, 310 P.3d 58; *People v. Reed,* 2013 COA 113, ¶ 42, 338 P.3d 364. A district court abuses its discretion if its decision is manifestly unreasonable, arbitrary, or unfair, or if its decision is based on an erroneous understanding or application of the law. *People v. Trammell,* 2014 COA 34, ¶ 10, —— P.3d ——; *People v. Muniz,* 190 P.3d 774, 781 (Colo.App.2008); *see Davis,* ¶ 13; *Reed,* ¶ 42.

■ ¶ 23 Where, as here, the defendant objected to the admission of evidence, we review any error under the harmless error standard. *Yusem v. People,* 210 P.3d 458, 469 (Colo.2009). Under that standard, we must "consider whether any error, in light of the entire record of the trial, substantially influenced the verdict or impaired the fairness of the trial." *Davis,* ¶ 13.

¶ 24 CRE 803(17) codifies an exception to the hearsay rule for market reports and commercial publications. Specifically, that exception provides that "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations" are admissible. CRE 803(17).

■ ¶ 25 At common law, this exception was recognized as a narrow exception that was to be applied to a well-defined category of cases. *See* 6 John Henry Wigmore, *Evidence in Trials at Common Law* § 1702, at 38 (Chadbourn rev. ed. 1976); *see also id.* §§ 1704–06, at 41–51 (describing the common-law origins of the exception); 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:101, at 885 (3d ed.

2007) ("The commercial list exception is actually narrow, and grew out of a tradition with distinct limits."); Fed.R.Evid. 803(17) advisory committee's note (acknowledging the common law origins of the substantially similar federal rule).[4]

¶ 26 "As with other hearsay exceptions, the admissibility of market reports and commercial publications under Rule 803(17) is predicated on the two factors of necessity and reliability." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.19[1], at 803–131 (Joseph M. McLaughlin ed., 2d ed. 2014). Admitting such evidence is considered necessary because it would be difficult or impracticable to locate and summon every person who had contributed to the report or list. *Id.*; Mueller & Kirkpatrick § 8:101, at 882. The evidence is considered reliable because the compilers know that if the material they publish is inaccurate, the public or the trade will cease consulting their publication. Weinstein & Berger § 803.19[1], at 803–131; *see also* Mueller & Kirkpatrick § 8:101, at 882 ("[T]he material is considered trustworthy because many people rely on it in connection with their very livelihoods. . . . [A] pattern of unreliability invites users to turn elsewhere, which would make those who make or compile and publish such material lose stature and perhaps income.").

### 3. Analysis

■ ¶ 27 The only published Colorado appellate court decision applying CRE 803(17) is *People v. Thornton,* 251 P.3d 1147 (Colo. App.2010). In that case, a division of this court held that information from the Kelley Blue Book was admissible under the market reports exception to prove the value of a stolen vehicle. *Id.* at 1150. The division

concluded that the Blue Book, as a market report generally used and relied on by the public, clearly fit within the market reports exception. *Id.*; *see also State v. Erickstad,* 620 N.W.2d 136, 145 (N.D.2000) (noting that courts in numerous jurisdictions have held that recognized used car price guides fit within the market reports exception).

¶ 28 The evidence at issue in this case, however, fits less obviously within the market reports exception. We must therefore determine whether information from Drugs. com meets the requisite criteria of necessity and reliability to be admissible under that exception for the purpose of identifying a controlled substance. We conclude that it does not.[5]

¶ 29 The People have not argued that using Drugs.com is a necessary means of identifying drugs. And it seems clear to us that it is not. Visually identifying a drug based on a Drugs.com search is not the only method—or even the most effective or reliable method—available to law enforcement officials. Rather, as Trooper Hancey acknowledged, another available method for identifying the pills in this case would have been to submit them to the Colorado Bureau of Investigation for chemical testing. Thus, use of Drugs.com to identify the drugs was by no means necessary.

¶ 30 We also conclude that the People failed to establish that information from Drugs.com is sufficiently reliable for the purpose of identifying a controlled substance, for the following reasons.

¶ 31 First, although the People argue that information from Drugs.com is reliable because Trooper Hancey testified that Drugs. com is "nationally recognized" and that law enforcement officials rely on it when identify-

---

4. Because CRE 803(17) is substantially identical to Fed.R.Evid. 803(17), we may consider federal authorities construing the federal rule in determining the scope of Colorado's rule. *See People v. Melendez,* 102 P.3d 315, 319 (Colo.2004); *People v. Gash,* 165 P.3d 779, 784 (Colo.App.2006).

5. Arguably, as defendant points out, information from Drugs.com does not fit within the plain language of CRE 803(17) because it is not a "market report" or "commercial publication." *Cf. Hardy v. State,* 140 So.3d 1016, 1020 (Fla. Dist.Ct.App.2014) (holding that a computer data-

base listing prescriptions filled for certain controlled substances was not a "market report or commercial compilation" within the meaning of Florida's substantially similar Rule 803(17)). However, we need not decide that question because we conclude that, even if we assume that information from Drugs.com may be considered a "market report," it does not bear sufficient indicia of necessity and reliability to be admissible under CRE 803(17) for the purpose of identifying a controlled substance.

ing unknown pills, the prosecution offered no foundation for Trooper Hancey's assessment that Drugs.com is nationally recognized. And, in any event, Trooper Hancey's testimony alone was insufficient to establish the website's reliability. *See In re Anthony M.S.,* No.2010AP 1669, 2011 WL 2228538, at *2 (Wis. Ct.App. June 9, 2011) (unpublished opinion) (holding that police officer's testimony that he had used Drugs.com previously in his professional capacity was insufficient to prove the reliability of Drugs.com). Indeed, under the People's proposed interpretation of CRE 803(17), hearsay evidence from nearly any Internet database would be admissible, so long as a law enforcement official testifies that the database is used and relied on generally by law enforcement officials. That interpretation is simply too broad. *Cf. Pers. Audio, LLC v. CBS Corp.,* No. 2:13–CV–270–JRGRSP, 2014 WL 1202698, at *4–5 (E.D.Tex. Mar. 20, 2014) (unpublished opinion) (holding a LinkedIn profile inadmissible under Fed.R.Evid. 803(17), and noting that under CBS's interpretation of Rule 803(17), any online information would necessarily be admissible if a journalist testifies that he uses that resource to gather information).

¶ 32 Second, courts in several other jurisdictions have held that mere visual identification of prescription drugs—that is, identification of a drug by comparing its physical attributes to a reference material such as Drugs.com—is not a sufficiently reliable method of proof in a criminal trial. *See, e.g., People v. Mocaby,* 378 Ill.App.3d 1095, 318 Ill.Dec. 39, 882 N.E.2d 1162, 1166–68 (2008) (holding that evidence was insufficient to show that pills were controlled substances where a forensic scientist had identified the pills by comparing them to pictures in a book but had not performed a chemical analysis); *State v. Ward,* 364 N.C. 133, 694 S.E.2d 738, 740, 743–47 (2010) (holding that expert witness testimony establishing that a substance is a controlled substance "must be based on a scientifically valid chemical analysis and not mere visual inspection"); *cf. State v. Stank,* 288 Wis.2d 414, 708 N.W.2d 43, 54–55 (Wis. Ct.App.2005) (holding that evidence was sufficient to support the defendant's conviction for possession with the intent to distribute a controlled substance where the detective conducted both a preliminary identification of the pills using the *Physicians' Desk Reference* and a confirmatory chemical analysis of the pills).[6]

¶ 33 Third, although the People argue that information from Drugs.com is reliable because that website compiles and publishes material from reliable sources, they provide no support for that proposition. And, indeed, courts in several jurisdictions have questioned the reliability of several of Drugs.com's sources—including the *Physicians' Desk Reference* and Micromedex. *See, e.g., Garvey v. O'Donoghue,* 530 A.2d 1141, 1145 (D.C.1987) (holding the *Physicians' Desk Reference* inadmissible under Fed.R.Evid. 803(17) because the publication contains not only factual statements, but also "directions, opinions, suggestions, and recommendations"); *Ward,* 694 S.E.2d at 745–47 (holding that an expert witness's reliance on Micromedex was not a sufficiently reliable method of proof for a criminal prosecution); *Kahanek v. Rogers,* 12 S.W.3d 501, 504 (Tex.App.1999) (holding the *Physicians' Desk Reference* inadmissible under Texas's market reports exception because the publication "goes beyond objective information to items on which learned professionals could disagree in good faith"); *see also In re Richardson–Merrell, Inc. Bendectin Prods. Liab. Litig.,* 624 F.Supp. 1212, 1232 (S.D.Ohio 1985) (holding without explanation that excerpts from the *Physicians' Desk Reference* did not fall within the commercial publications exception of Fed.R.Evid. 803(17)), *aff'd,* 857 F.2d 290 (6th Cir.1988).

---

6. Some courts have noted in this context that by criminalizing possession of counterfeit controlled substances, legislatures have recognized expressly that counterfeiters can make substances appear, by markings and physical character, to be controlled substances. *E.g., State v. Ward,* 364 N.C. 133, 694 S.E.2d 738, 744–45 (2010). The Colorado General Assembly is one such legislature. It has criminalized possession of imitation or counterfeit controlled substances, §§ 18–18–419 to –424, C.R.S.2014, and in so doing has defined an "imitation controlled substance" as a substance that is not a controlled substance but appears to be by, among other things, "color, shape, size, and markings...." § 18–18–420(3).

¶ 34 Fourth, we find unpersuasive the People's argument that information from Drugs.com is reliable because its "mission statement says that it is the 'largest, most widely visited, independent medicine information website available on the Internet,' and it provides 'independent, objective, comprehensive, and up-to-date information ... for both consumers and healthcare professionals.'" That mission statement was not included in the record; thus, we may not consider it. *See Fendley v. People,* 107 P.3d 1122, 1125 (Colo.App.2004) ("We are limited to the record presented and may consider only arguments and assertions supported by the evidence in the record."). But even if we assume that the mission statement is properly before us, a website's own self-serving mission statement hardly constitutes objective proof of the website's reliability. And the mission statement is offset by the website's disclaimer of any guarantee as to the accuracy of the information on the site.

¶ 35 Finally, we are not persuaded by the district court's rationale that information from Drugs.com is sufficiently reliable because numerous courts have cited Drugs.com in published judicial opinions. Nearly all of the decisions we have found that cite Drugs.com do so in the context of providing general information about a particular drug (e.g., its intended uses or side effects). *See, e.g., Gentry v. Comm'r of Soc. Sec.,* 741 F.3d 708, 715 (6th Cir.2014) (side effects); *Blackmon v. Astrue,* 730 F.Supp.2d 867, 870–73 (N.D.Ill. 2010) (intended uses). We have not found a single decision approving evidence from Drugs.com as proof of the identity of an unknown drug.

¶ 36 For these reasons, we conclude that the People failed to show that information from Drugs.com was sufficiently necessary and reliable to be admissible under CRE 803(17). The district court therefore erred in admitting the hearsay evidence obtained from that website.[7]

¶ 37 We further conclude that this error was not harmless. Trooper Hancey's testimony about what he saw on Drugs.com was the only evidence presented at trial to identify some of the pills found in defendant's possession as oxycodone, and was the primary evidence that any of the pills were alprazolam.[8] Neither Trooper Hancey nor any other law enforcement official ever submitted the pills for confirmatory chemical testing. Thus, we cannot say with fair assurance that the erroneous admission of Trooper Hancey's testimony did not substantially influence the verdicts in this case. *See Yusem,* 210 P.3d at 469.

### B. Sufficiency of the Evidence

¶ 38 We must also consider defendant's challenge to the sufficiency of evidence. If the evidence presented at trial was insufficient to support the convictions, a second trial on the same charges would violate defendant's right to be free from double jeopardy. *See Burks v. United States,* 437 U.S. 1, 14–18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *People v. Lybarger,* 700 P.2d 910, 916 (Colo.1985).

¶ 39 We review de novo to determine whether sufficient evidence supports a conviction. *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005); *People v. Dutton,* 2014 COA 51, ¶ 23, —— P.3d ——. Evidence is sufficient to support a conviction when, in viewing the evidence in the light most favorable to the prosecution, a rational fact finder could conclude that the evidence is sufficient and substantial enough to support the defendant's guilt beyond a reasonable doubt. *Dempsey,* 117 P.3d at 807; *Dutton,* ¶ 23. In assessing the sufficiency of the evidence, we must consider all the evidence admitted at trial, including the erroneously admitted evidence from Drugs.com. *See Lockhart v. Nelson,* 488 U.S. 33, 40–42, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) (a reviewing court must consider all evidence admitted by the district court in deciding whether retrial is permissi-

---

7. We do not express any opinion on the use of information from Drugs.com to establish reasonable suspicion or probable cause.

8. And contrary to the People's suggestion, defendant did not have ample opportunity to question the accuracy of the Drugs.com information at trial. Trooper Hancey did not know how the information had been compiled, and so would not have been able to answer any questions about the accuracy of the information.

ble under the Double Jeopardy Clause); *accord People v. Williams*, 183 P.3d 577, 581 (Colo.App.2007); *People v. Sisneros*, 44 Colo. App. 65, 68, 606 P.2d 1317, 1319 (1980); *see also United States v. Medina–Copete*, 757 F.3d 1092, 1107 (10th Cir.2014) (retrial is impermissible only when the evidence submitted at trial—including any erroneously admitted evidence—is insufficient to support the verdict); *State v. Jefferson*, 297 Kan. 1151, 310 P.3d 331, 342 (2013); *State v. Brewer*, 121 Ohio St.3d 202, 903 N.E.2d 284, 289–91 (2009). And we must give the prosecution the benefit of every reasonable inference that may fairly be drawn from the evidence. *Kogan v. People*, 756 P.2d 945, 950 (Colo.1988), *abrogated on other grounds by Erickson v. People*, 951 P.2d 919, 923 (Colo.1998).

¶ 40 The prosecution presented the following evidence to support defendant's conviction for possession of alprazolam:

- defendant said that she had taken Xanax earlier that day;
- defendant repeatedly told Trooper Hancey that she had prescriptions for the pills he had found in her pockets;
- Trooper Hancey never found any prescriptions or prescription bottles;
- although defendant's blood test did not detect any Xanax, the concentration of Xanax in a person's blood can drop below the detection limit within two hours;
- defendant's blood was tested approximately two hours after her arrest; and
- the pills in defendant's possession were the same shape and color as alprazolam, and bore numerical markings matching that drug.

¶ 41 Giving the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence, although this presents a close question, we conclude that a rational fact finder could have found beyond a reasonable doubt that defendant possessed alprazolam. Defendant is therefore subject to retrial on the charge for possession of that substance.

¶ 42 However, we conclude that the evidence was insufficient to prove possession of oxycodone. The evidence relating to the identity of that drug consisted only of Trooper Hancey's testimony that the appearance of certain pills matched the appearance of oxycodone as shown on Drugs.com. The People were required to prove that the pills were oxycodone, not merely that they appeared to be oxycodone. Without some other confirmatory evidence (such as defendant's statement to the officer that she had taken Xanax (alprazolam) earlier in the day), the Drugs.com evidence was insufficient to prove identity of the pills as oxycodone beyond a reasonable doubt. Therefore, the conviction for possession of a schedule II controlled substance must be vacated, and the People cannot retry defendant on that charge.

### III. The People's Cross–Appeal

¶ 43 The People contend on cross-appeal that the district court imposed an illegal sentence by suspending half of the mandatory minimum fine for defendant's conviction for failure to present proof of insurance. We agree.

### A. Procedural Background

¶ 44 At the sentencing hearing, defendant told the court that her car had been auctioned off and that she was no longer driving.

¶ 45 The court observed that the sentencing statute permits a court to suspend half of the $500 mandatory minimum fine for failure to present proof of insurance if the defendant shows that she has obtained insurance. The court then reasoned as follows:

> Since you have no car and have no need to drive, it would appear to me the same reduction would be appropriate. Because you are—what the statute implies here is that if you are still a risk, you have to pay the full fine. If you are no longer a risk, either because you have insurance or because you don't have a car and [are] not driving, that is the case.

The court thus sentenced defendant to a reduced fine of $250 based on defendant's representation that she was no longer driving.

### B. Standard of Review and Applicable Law

¶ 46 We review de novo the legality of a sentence. *People v. Bassford*, 2014 COA

15, ¶ 20, 343 P.3d 1003. A sentence that is inconsistent with the statutory sentencing scheme outlined by the General Assembly is illegal. *Lucero v. People*, 2012 CO 7, ¶ 20, 272 P.3d 1063; *People v. Jenkins*, 2013 COA 76, ¶ 11, 305 P.3d 420. Therefore, a court may not depart from the statutory scheme to impose what it considers to be a more appropriate sentence. *Bassford*, ¶ 20 (citing *People v. White*, 679 P.2d 602, 603–04 (Colo. 1984)).

¶ 47 Our determination whether the statutory reduction in the mandatory minimum fine applies to defendant requires us to interpret section 42–4–1409(4)(a), C.R.S.2014. Statutory interpretation is also a question of law that we review de novo. *Finney v. People*, 2014 CO 38, ¶ 12, 325 P.3d 1044; *People v. Lacallo*, 2014 COA 78, ¶ 75, 338 P.3d 442.

¶ 48 When interpreting a statute, our primary goals are to determine and effectuate the intent of the General Assembly. *Finney*, ¶ 12; *Lacallo*, ¶ 75. To do so, we look first to the statute's plain language, giving the words and phrases therein their plain and ordinary meanings. *Finney*, ¶ 12; *People v. Green*, 2012 COA 68, ¶ 23, 296 P.3d 260. Where the statutory language is clear and unambiguous, we enforce the statute as written, without resorting to other rules of statutory construction. *Finney*, ¶ 12; *Green*, ¶ 23.

¶ 49 "A statutory interpretation leading to an illogical or absurd result will not be followed." *Frazier v. People*, 90 P.3d 807, 811 (Colo.2004).

¶ 50 Section 42–4–1409(4)(a) provides that, when a person is convicted for failure to present proof of insurance, she "shall be punished by a minimum mandatory fine of not less than five hundred dollars." That section further provides, however, that "[t]he court may suspend up to one half of the fine upon a showing that appropriate insurance ... has been obtained." § 42–4–1409(4)(a).

### C. Analysis

¶ 51 We conclude that the plain language of section 42–4–1409(4)(a) is clear and unambiguous, and therefore must be enforced as written. Under that section's plain language, the only circumstance in which a court may suspend half of the mandatory minimum fine is when a defendant shows that she has obtained qualifying insurance. Nothing in the plain language of the statute provides an exception where a defendant represents that she has relinquished ownership of her car or is not currently driving. Nor, contrary to the district court's reasoning, is any such exception implicit in the statute. Indeed, interpreting the statute to provide such an exception would lead to an illogical and absurd result. It seems evident that the purpose of the provision allowing a court to suspend up to one-half of the mandatory fine is to encourage drivers to obtain statutorily-required insurance, so that when they drive after having been cited for failing to present proof of insurance, they will do so in compliance with the law. A driver's representation that she does not own a car or is not currently driving does not serve this purpose, as the driver could drive someone else's car or change her mind about driving at any time. Were she to do so without having obtained insurance, she would violate the law, despite having obtained a reduction in sentence available only as an incentive to avoid such a future violation.

¶ 52 Because the district court imposed a sentence that was contrary to the plain language of the sentencing statute, we conclude that the sentence was illegal. We therefore vacate defendant's sentence as to her conviction for failure to present proof of insurance, and remand for resentencing on that conviction.

### IV. Conclusion

¶ 53 We conclude that the district court erred by admitting hearsay testimony about information from Drugs.com. Because we have determined that the evidence was insufficient to support the conviction for possession of oxycodone, the judgment is vacated as to that conviction and the People may not retry defendant on that charge. The judgment is reversed as to the conviction for possession of alprazolam, and defendant may be retried on that charge.

¶ 54 We also conclude that the court erred by suspending half of the $500 mandatory

minimum fine for defendant's conviction for failure to present proof of insurance. We therefore vacate that portion of defendant's sentence and remand the case for resentencing consistent with this opinion.

¶ 55 The judgment is affirmed in all other respects.

JUDGE HAWTHORNE and JUDGE ASHBY concur.