The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 2, 2022

## 2022COA59

**No. 18CA1697, *Peo v Newton* — Crimes — Murder in the First
Degree — Tampering with Physical Evidence; Criminal Law —
Custodial Interrogation — Miranda; Constitutional Law — Fifth
Amendment — Right to Counsel**

Confronting two issues of first impression, the division

reverses the defendant's convictions for first degree murder and

evidence tampering and remands the case for a new trial. First, the

division concludes that when an interrogating officer contradicts

written *Miranda* warnings and misinforms a defendant about his

right to have an attorney appointed before questioning and then

fails to resolve the defendant's resulting confusion, any statements

during the subsequent interrogation must be suppressed. Because

the defendant's unconstitutionally obtained statements contributed

to both convictions, the convictions must be reversed.

Second, the division determines that, under the circumstances here, the defendant's attempt to conceal the weapon he used to shoot the victim was sufficient to establish that he believed an official proceeding was about to be instituted pursuant to section 18-8-501(3), C.R.S. 2021. The prosecution may thus retry the defendant on this charge, although it will not have the benefit of his unconstitutionally obtained confession in doing so.

COLORADO COURT OF APPEALS                                    **2022COA59**

_____

Court of Appeals No. 18CA1697
Jefferson County District Court No. 16CR2019
Honorable Christie A. Bachmeyer, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Erik Jamal Newton,

Defendant-Appellant.

_____

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE GROVE
Yun and Graham*, JJ., concur

Announced June 2, 2022

_____

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Meghan M. Morris, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1 Defendant, Erik Jamal Newton, appeals his convictions for first degree murder and evidence tampering. Because the officers who conducted Newton's custodial interview incorrectly led him to believe that he had no right to counsel at state expense during his interrogation, and because the admission of the confession that he made during that interrogation was not harmless error, we reverse his convictions and remand the case for a new trial.

## I.    Background

¶ 2 At trial, the People presented evidence from which the jury could find the following facts. In 2009, Newton met Onyx Lebron in high school, and the two became close friends. Newton got to know Lebron's family, including his mother and her boyfriend, Zachary Greenstreet. By 2015, however, Newton and Lebron had fallen out and Newton no longer had any contact with Lebron or his family.

¶ 3 Around that time, Newton began suffering from auditory hallucinations, during which he heard voices of Lebron, Greenstreet, and other members of the Lebron family. He reported this to mental health professionals and was given antipsychotic medication, but it did not help and caused side effects, so he stopped taking it. The voices continued to taunt and torment

Newton, and he claimed that the only way to stop them was to shoot one of the people whose voices he heard.

¶ 4     On the night of June 17, 2016, Newton went to the Lebron home and, finding Greenstreet in the driveway, shot Greenstreet multiple times, killing him.  Then he fled the scene and buried the gun in a nearby cemetery because he "didn't want to get caught."

¶ 5     At approximately 3 a.m., after Newton left the cemetery, an officer investigating a report of a suspicious person spotted him walking down the road and activated his overhead lights.  Startled, Newton jumped a fence and tried to flee.  Officers caught him a short time later, but he claimed that he had been at a party and denied knowing anything about the Greenstreet shooting.  He was arrested for trespassing and then released from the county jail.  Shortly after his release, however, Newton returned to the cemetery and dug up the gun.  By that time, the authorities had linked him to Greenstreet's shooting, and, while executing a search warrant, they arrested him and found the gun in his jacket pocket.

¶ 6     Once again, Newton was brought to the county jail.  This time, after the officers read him his *Miranda* rights, he was interrogated

for several hours.  He admitted both to killing Greenstreet and to hiding the gun in the cemetery.

¶ 7     Because they are dispositive of Newton's appeal, we address only two of his ten contentions: (1) whether the court should have granted his suppression motion; and (2) whether there was sufficient evidence to support his tampering conviction.[1]  We agree that the trial court erred when it denied Newton's suppression motion and that, as a result, he is entitled to a new trial.  We also conclude that Newton is eligible for retrial on the tampering charge because, even though that conviction depended heavily on his unconstitutionally obtained statements, the prosecution still presented sufficient evidence to support it.

## II.     Waiver of Right to Counsel

¶ 8     Newton contends that statements he made during his custodial interview should have been suppressed because the

---

[1] We do not address Newton's remaining contentions of error because they are either intertwined with his unconstitutional custodial interrogation or involve particular circumstances or strategic decisions that may not arise in the event of a retrial.  *See People v. Aldridge*, 2018 COA 131, ¶ 45 (declining to address appellate issues that are unlikely to arise in the same context on remand).

interrogating officers misled him about his right to have an attorney appointed before questioning. We agree and further conclude that the error was not harmless.

## A. Standard of Review

¶ 9 A trial court's ruling on a suppression motion presents a mixed question of fact and law. *People v. Webb*, 2014 CO 36, ¶ 9; *People v. Krueger*, 2012 COA 80, ¶ 42. We defer to the court's findings of fact if competent evidence in the record supports them, and we review the court's legal conclusions de novo. *Webb*, ¶ 9. Whether a defendant understood his rights well enough to waive them is essentially a question of law. *People v. Al-Yousif*, 49 P.3d 1165, 1167 (Colo. 2002).

¶ 10 We review preserved errors of constitutional dimension for constitutional harmless error — that is, we will reverse unless the People show that the error was harmless beyond a reasonable doubt. *Hagos v. People*, 2012 CO 63, ¶ 11. An error is harmless beyond a reasonable doubt if there is no reasonable possibility that it contributed to the conviction. *Margerum v. People*, 2019 CO 100, ¶ 14.

## B. Applicable Law

¶ 11    Police are required to advise criminal suspects of their constitutional rights before any custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 471 (1966). A *Miranda* advisement is adequate as long as it conveys to the suspect a clear and understandable warning that he has a right to remain silent, that anything he says can be used against him in court, that he has a right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Id.* at 479.

¶ 12    If a defendant waives his rights and agrees to speak to police officers, the validity of that waiver depends on whether the waiver was (1) voluntary and (2) knowingly and intelligently made with full awareness of the nature of the right and the consequences of its abandonment. *People v. Knedler*, 2014 CO 28, ¶ 10.

¶ 13    When evaluating whether a *Miranda* waiver was knowing and intelligent, we consider the totality of the circumstances. *Id.* at ¶ 13. Although no "talismanic incantation" of *Miranda* rights is required to satisfy the strictures of that case, the appropriate inquiry concerning the adequacy of the advisements is whether

these rights have reasonably been conveyed to the suspect. *Sanchez v. People*, 2014 CO 56, ¶ 12 (quoting *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989)). The People bear the burden of proving the validity of the defendant's waiver. *Knedler*, ¶ 10.

## C.  Additional Facts

¶ 14    Officers Vernon Woodin and Elias Alberti brought Newton to the police station for questioning shortly after arresting him. The following facts are derived from our review of the video recording of that discussion. Woodin gave Newton a written list of his *Miranda* rights and read them out loud. He correctly told Newton that he had a right to an attorney who could be present during questioning, and that "[i]f you cannot afford to hire an attorney, one will be appointed to represent you before questioning if you wish." Newton confirmed that he had read and understood his rights, and then he initialed the form next to each of them. Before signing the bottom of the form, however, he made clear that his understanding was less than complete:

> WOODIN: Ok. Having these rights in mind, do you wish to talk with me now?
>
> NEWTON: Um, well I do wish to talk to you and I, I can't afford a lawyer, and an attorney,

6

when I go to court, wouldn't he be there anyway?

WOODIN: So, the, an attorney would be appointed after um, the only way that you would get an attorney now is if you were able to pay for one.

NEWTON: Right.

WOODIN: Ok?

NEWTON: Right I can't, uh, can't.

WOODIN: Ok.

NEWTON: So . . .

ALBERTI: So the que-, the question is not really whether you can afford [an] attorney or not.

NEWTON: Mm-hmmm.

ALBERTI: Ok?  The question is, with these rights in mind do you wish to talk to us now?

NEWTON: Oh, yeah, so it's fine.

ALBERTI: Ok.

WOODIN: Ok, so if you do, if you want to talk with me, and you agree to talk with me without your attorney, I'm gonna have you sign your name right there ok?

NEWTON: Ok.

¶ 15    After hearing from Woodin that the "only way" to have an

attorney present for questioning would be to hire one, and after

telling the officers that he could not afford an attorney, Newton then signed his name to the *Miranda* waiver.

¶ 16    Alberti, apparently realizing his partner's misstatement, then attempted to fix it by "clarify[ing]" that while Newton had a right to representation during the interrogation, if he "want[ed] to talk to [the officers] without your attorney present, then we can do that now." But when Newton asked once again about whether he would have to pay for an attorney during the interview, Alberti sidestepped the question:

> NEWTON: And I'd have to pay for that one, right?
>
> ALBERTI: Well what I'm trying to say is, is that you have a right to have an attorney present, so if you're saying I want to talk to you, but I only want to talk to you with my attorney present, then that's your right.
>
> NEWTON: Oh, (inaudible).
>
> ALBERTI: If you're saying, I'll talk to ya' and I don't really care whether my attorney's present or not, that's the second part. Does that make sense?
>
> NEWTON: Yes, yeah, I just don't have an attorney.
>
> ALBERTI: Ok. It's not whether you have one or not, you're, I think you're confused.

NEWTON: Oh.

ALBERTI: It's not whether you have, we know you don't have one, because there's not one sitting here.

NEWTON: (Laughs) Yeah, yeah.

ALBERTI: The right is that you, you can have an attorney sitting here if you want one.  So my question is to you, just so we're on the same page, are you willing to talk to us without an attorney present or would you like to have an attorney present before you answer any questions?

NEWTON: Um, (long pause) no I think it's fine.

ALBERTI: Ok.  Do you understand the two differences that we're talking about, though, right?

NEWTON: Yeah.

ALBERTI: Ok.

¶ 17    Once this discussion about Newton's *Miranda* rights concluded, Newton confessed in extensive detail that he intentionally killed Greenstreet after hearing voices telling him to do so, and that he buried the gun because he did not want to get caught with the murder weapon.

## D. Analysis

¶ 18 Newton moved to suppress his statements at the police station, arguing that he did not knowingly and voluntarily waive his *Miranda* rights because the officers misled him about his right to counsel. We agree that Newton's waiver was invalid.

¶ 19 Our supreme court has held that an advisement is adequate if a suspect's *Miranda* rights are "reasonably conveyed to the suspect" and he understands them as safeguards for his constitutional privilege. *Sanchez,* ¶ 11. One of those rights, guaranteed by the Fifth Amendment, ensures that a suspect is entitled to "deal with the police only through counsel," *id.* at ¶ 14 (quoting *McNeil v. Wisconsin,* 501 U.S. 171, 178 (1991)). To effectuate that right, police must warn a suspect "not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him." *Id.* at ¶ 15 (quoting *Miranda,* 384 U.S. at 473). Thus,

> [a]s long as the suspect is *made to understand* that regardless of his present ability to retain counsel, he will be entitled to have an attorney appointed to intercede on his behalf with the police, and he voluntarily waives that right, his Fifth Amendment right to counsel has been adequately safeguarded.

*Id.* at ¶ 16 (emphasis added).

¶ 20     In *Sanchez,* our supreme court considered the adequacy of an advisement in which the interviewing officer did not expressly tell the defendant that he was entitled to an attorney "free of charge." *Id.* at ¶ 4.  The court affirmed the defendant's conviction, noting that in response to the defendant's inquiry whether "a lawyer was going to want money . . . the officer expressly informed him that if he did not have the means for an attorney, one would be appointed for him." *Id.* at ¶ 20.  This advisement was adequate, the court held, because "[u]ltimate financial liability for the cost of consultation with and the presence of appointed counsel during custodial interrogation was never a consideration of consequence for the Court in *Miranda*." *Id.* at ¶ 16.

¶ 21     No such clarity was provided to Newton.  To the contrary, Woodin affirmatively misinformed Newton about his *Miranda* rights, telling him that "the only way" he could have an attorney present for questioning would be if he was able "to pay for one."  This inexplicably contradicted the written advisement that Woodin had just read aloud, and in any event, it did not answer Newton's question, which was about representation during future court

11

appearances. It was only after this incorrect statement that Newton signed the *Miranda* waiver.

¶ 22 Even though the written *Miranda* warning on the page Newton signed — "if you cannot afford to hire a lawyer, one will be appointed to represent you before questioning, if you wish" — was correct, it was obvious that Newton remained unsure of his rights. In the discussion that ensued, with Alberti taking the lead, Newton again sought to clarify whether he would need to pay for a lawyer to obtain representation prior to questioning. Alberti dodged the question, and instead — despite acknowledging that Newton was "confused" — only reiterated that Newton had a right to an attorney. At the suppression hearing, Newton testified that with respect to the *Miranda* advisement, he "went with what [the officers] were saying." Notably, despite Newton's obvious confusion, at *no point* during the conversation did either officer correct Woodin's affirmative misrepresentation.

¶ 23 To be sure, no talismanic recitation of a defendant's *Miranda* rights is necessary. *Sanchez*, ¶ 12. But any *Miranda* advisement that either contains an affirmative misrepresentation of a defendant's rights or misleads a defendant about a material fact

regarding those rights, such as a defendant's right to an attorney regardless of his ability to pay, is inherently insufficient. And because Newton's agreement to speak to the police without counsel present was based at least partly on the interviewing officers' incorrect and unrebutted explanation of his constitutional right, we cannot conclude that his waiver was knowing and intelligent. Therefore, the trial court erred by denying Newton's motion to suppress his statements made at the police station.

¶ 24    We further conclude that the error was not harmless with respect to either of Newton's convictions. The prosecution relied on Newton's confession throughout each phase of the trial:

- In her opening statement, the prosecutor described how Newton told the officers exactly what happened the night he shot Greenstreet, and how he ran away and hid the gun "because he didn't want to get caught."

- During the prosecution's case-in-chief, Woodin described how Newton's statements supported the theory that the shooting was premeditated and deliberate. Among other things, Woodin discussed the souring of the relationship between Newton and the Lebron family and explained

how Newton, armed with a gun, traveled for hours on two trains and a bus to get to Greenstreet's home, and then fled after the shooting because he did not want to get in trouble.

- During closing argument, the prosecutor used direct quotes from Newton's confession to explain the steps that Newton took to intentionally kill Greenstreet, saying that "every single step shows deliberation."

¶ 25 Given the importance of Newton's unconstitutionally obtained statements to the prosecution's case, we cannot conclude that their admission was harmless beyond a reasonable doubt. Newton's theory of defense was that he had not formed the culpable mental state for first degree murder. But his confession provided significant support for the prosecution's argument that he had, in fact, intended to kill Greenstreet. In addition, Newton's confession provided clear evidence that he tampered with evidence by burying the gun, as he described in his own words why he chose to do so. Because the prosecution relied on Newton's confession so heavily throughout the trial, and because some elements of Newton's confession provided a unique insight into the motivations for

Newton's conduct, we cannot say that this error was harmless beyond a reasonable doubt. Accordingly, we reverse both convictions.

## III. Sufficiency of the Evidence

¶ 26 Newton contends that the prosecution presented insufficient evidence to support his conviction on the tampering charge. We disagree.

### A. Standard of Review and Applicable Law

¶ 27 We review de novo sufficiency of the evidence claims. *McCoy v. People*, 2019 CO 44, ¶ 27. In determining whether sufficient evidence exists to sustain a defendant's conviction, we consider whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the verdict, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). We give the prosecution the benefit of all reasonable inferences that might fairly be drawn from the evidence. *People v. Perez*, 2016 CO 12, ¶ 25.

B.     Analysis

¶ 28    "A person commits tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, he . . . conceals . . . physical evidence with intent to impair its . . . availability in the pending or prospective official proceeding."  § 18-8-610(1)(a), C.R.S. 2021.  An "official proceeding" is "a proceeding heard before any legislative, judicial, administrative, or other government agency, or official authorized to hear evidence under oath, . . . or other person taking testimony or depositions in any such proceedings."  § 18-8-501(3), C.R.S. 2021; *see also* § 18-8-601, C.R.S. 2021 (definitions in section 18-8-501(3) apply to section 18-8-610).  Newton contends that the prosecution failed to introduce evidence that an official proceeding was "about to be instituted" and that he concealed the gun with intent to impair its availability in a prospective official proceeding.

1.    Official Proceeding About to Be Instituted

¶ 29    First, we conclude that the evidence was sufficient for the jury to conclude that Newton knew an official proceeding was about to be instituted.  Although Colorado courts have not addressed this

16

precise issue, they have concluded that a defendant's attempt to conceal an item is sufficient to establish the defendant's belief that an official proceeding was about to be instituted. *See Frayer v. People,* 684 P.2d 927, 929 (Colo. 1984); *People v. Atencio,* 140 P.3d 73, 77 (Colo. App. 2005).

¶ 30    In *Atencio,* a division of this court specifically left open circumstances, like those here, where a defendant makes evidence "unavailable to law enforcement at a point in time when he or she does not know with certainty of an imminent arrest that will result in discovery of the" evidence. 140 P.3d at 77. However, "it is evident from the language of the tampering statute that the General Assembly intended to criminalize behavior that interferes with an official proceeding even if that behavior occurs before the proceeding is instituted." *Id.*; *see also Frayer,* 684 P.2d at 929 (sufficient evidence that defendant believed an official proceeding was about to be instituted); *People v. Candelaria,* 107 P.3d 1080, 1087 (Colo. App. 2004) (same), *rev'd in part on other grounds,* 148 P.3d 178 (Colo. 2006).

¶ 31    Thus, we conclude that there is no requirement under section 18-8-610 that acts sufficient to support a tampering charge must

17

occur subsequently to either a defendant's contact with police or his discovery that he is about to be arrested. Rather "the offense of tampering with physical evidence depends, to an important degree, on the defendant's conduct and intent." *Frayer*, 684 P.2d at 929. And a defendant could believe, without certainty, that an official proceeding is about to be instituted even if the police have not contacted him.

¶ 32    Newton's own video confession established that he buried the gun because he "didn't want to get caught."[2] This statement made clear that Newton knew that his killing of Greenstreet could trigger an official proceeding. The jury could have reasonably concluded, based on the evidence, that such a proceeding was "about to be instituted." *See* § 18-8-610(1); *Candelaria*, 107 P.3d at 1087 (holding that when the murder weapon was never found, the evidence was sufficient for the jury to conclude that the defendant had tampered with the evidence).

---

[2] Although we have already held that Newton's confession would be inadmissible in the event of a retrial, when assessing the sufficiency of the evidence, "we must consider all the evidence admitted at trial, including . . . erroneously admitted evidence." *People v. Hard*, 2014 COA 132, ¶ 39.

18

### 2. Intent to Impair the Gun's Availability in a Prospective Official Proceeding

¶ 33     Second, we agree that the evidence was sufficient for the jury to conclude that Newton concealed the gun with the intent to impair its availability in a prospective proceeding. Newton argues that because he retrieved the gun from its hiding spot and had it in his possession when he was arrested, he could not have intended to impair its availability in a future proceeding. But the statute plainly requires the jury to assess Newton's intent at the moment he buried the gun, and not whether his objectives later changed. As we have already noted, Newton buried the gun because he "didn't want to get caught." This direct admission was an expression of his intent at the moment he buried the gun. And acting on that intent worked, at least initially. Despite being arrested in the vicinity of the Lebron house shortly after shooting Greenstreet, Newton did not have the gun on him and was not charged at that time with Greenstreet's murder.

¶ 34     Taken as a whole and in the light most favorable to the prosecution, these facts support a reasonable inference that, at the time Newton buried the gun, he believed that an official proceeding

was about to be instituted and he intended to impair the gun's availability in that proceeding. If there is evidence from which one may reasonably infer that the elements of the crime have been established, the evidence is substantial and sufficient. *People v. Torres*, 224 P.3d 268, 277 (Colo. App. 2009). Therefore, we conclude that the evidence was sufficient for a jury to conclude that Newton was guilty of the tampering charge.

## IV. Conclusion

¶ 35 The judgment is reversed, and the case is remanded for a new trial on both the first degree murder and evidence tampering charges with directions to exclude evidence of Newton's confession to the police.

JUDGE YUN and JUDGE GRAHAM concur.