The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY

April 9, 2020

## 2020COA65

**No. 17CA1096, *People v. McDonald* — Crimes — Colorado Organized Crime Control Act — Enterprise Associated in Fact**

This is an appeal from a criminal conviction for violation of the Colorado Organized Crime Control Act (COCCA).  Defendant contends that the prosecution failed to present sufficient evidence to prove the existence of, and his participation in, an "enterprise associated in fact" under COCCA because the prosecution did not present evidence to satisfy the additional three factors required in prosecution of federal Racketeer Influenced Organizations Act (RICO) offenses.

Defendant asks a division of the court of appeals to reexamine, for the first time since *People v. James*, 40 P.3d 36 (Colo. App. 2001), if we construe section 18-17-103(2), C.R.S. 2019, the definition for an "enterprise" under COCCA, in the same way that

federal courts construe "enterprise" under RICO, 18 U.S.C. § 1961(4) (2018).  Under the federal RICO scheme, two United States Supreme Court cases require a prosecutor to demonstrate three factors to prove that there is an "enterprise associated in fact."  The division in *James,* however, rejected this approach, concluding that "enterprise" under COCCA is a complete definition that doesn't require the prosecution to demonstrate the three factors required under federal RICO precedent.

The division, in a split decision, declines to depart from *James.*  In doing so, the division does not interpret "enterprise" under COCCA in the same manner as the federal RICO scheme.  On this basis (and because the majority concludes that the evidence on the COCCA charge was sufficient), the division affirms.

COLORADO COURT OF APPEALS **2020COA65**

Court of Appeals No. 17CA1096
Douglas County District Court No. 15CR542
Honorable David J. Stevens, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Marquis DeShawn McDonald,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Terry, J., concurs
Berger, J., dissents

Announced April 9, 2020

Philip J. Weiser, Attorney General, Brittany Limes, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Krista A. Schelhaas, Alternate Defense Counsel, Littleton, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Marquis DeShawn McDonald, appeals his conviction for violation of the Colorado Organized Crime Control Act (COCCA). McDonald contends that the prosecution failed to present sufficient evidence to prove the existence of, and his participation in, an "enterprise associated in fact" under COCCA because the prosecution did not present evidence to satisfy the additional three factors required in prosecution of federal Racketeer Influenced and Corrupt Organizations Act (RICO) offenses.

¶ 2     McDonald asks us to reexamine, for the first time since *People v. James*, 40 P.3d 36 (Colo. App. 2001), whether the definition of "enterprise" under COCCA, § 18-17-103(2), C.R.S. 2019, should be construed in the same way that federal courts construe "enterprise" under RICO, 18 U.S.C. § 1961(4) (2018). Under the federal RICO scheme, both *Boyle v. United States*, 556 U.S. 938 (2009), and *United States v. Turkette*, 452 U.S. 576 (1981), require the prosecution to demonstrate three factors to prove that there was an enterprise "associated in fact." The division in *James*, however, rejected *Turkette*, concluding that the definition of "enterprise" under COCCA is complete and, therefore, doesn't require the

prosecution to demonstrate the three factors required under federal RICO precedent. *See* 40 P.3d at 47-48.

¶ 3      We decline to depart from *James*. In so declining, we do not interpret "enterprise" under COCCA in the same manner as the federal RICO scheme. Although *James* hangs the distinction between "enterprise" under COCCA and "enterprise" under RICO on a thin reed, we conclude that the General Assembly has acquiesced to the *James* division's interpretation of "enterprise" because, while it has amended the definitions section of COCCA several times since *James*, the definition of "enterprise" has remained untouched. *Compare* § 18-17-103(2), *with* Ch. 229, sec. 1, § 18-17-103(2), 1981 Colo. Sess. Laws 1016. Accordingly, we affirm.

## I.      Background

¶ 4      McDonald confessed that he and three other men drove from Michigan to Colorado to steal Rolex watches from a retail jeweler in an Arapahoe County shopping mall. The plan was to have three men enter the jewelry store and steal watches, and have a fourth man wait in a getaway vehicle outside the mall.

¶ 5      On the morning of the heist, the men stole a minivan to use as their getaway vehicle. Video surveillance from the jewelry store

2

shows that, later that day, McDonald and another man entered the jewelry store, smashed open display cases containing Rolex watches, and then fled on foot with some of the watches. The police apprehended all four men shortly thereafter at various locations near the mall.

¶ 6    A jury convicted McDonald of theft, criminal mischief, aggravated motor vehicle theft, conspiracy to commit theft, and engaging in a pattern of racketeering in violation of COCCA. Further, the trial court adjudicated McDonald a habitual offender under section 18-1.3-801, C.R.S. 2019. This resulted in the quadrupling of McDonald's twenty-four-year COCCA sentence to ninety-six years.

## II.    Analysis

¶ 7    McDonald appeals only his COCCA conviction. To secure a COCCA conviction, the prosecution must prove beyond a reasonable doubt that the defendant "associated with[] any enterprise to knowingly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity." § 18-17-104(3), C.R.S. 2019. To be convicted, the defendant must have participated in "at least two acts of racketeering activity which are

3

related to the conduct of the enterprise"; acts of racketeering include, but are not limited to, offenses such as burglary or theft. § 18-17-103(3), (5)(b)(II). And, central to this appeal, the defendant must have been part of an "enterprise," which is defined as "any individual, sole proprietorship, partnership, corporation, trust, or other legal entity or any chartered union, association, or *group of individuals, associated in fact although not a legal entity*, and shall include illicit as well as licit enterprises and governmental as well as other entities." § 18-17-103(2) (emphasis added). An enterprise consists of "at least one other person or entity besides the defendant." *James*, 40 P.3d at 46 (first citing *People v. Pollard*, 3 P.3d 473 (Colo. App. 2000); then citing *Ferris v. Bakery, Confectionery & Tobacco Union, Local 26*, 867 P.2d 38 (Colo. App. 1993)).

¶ 8    McDonald was charged and tried for his participation in an "associated-in-fact enterprise." He raises two contentions on appeal, both of which rest on the meaning of an "associated-in-fact enterprise." First, McDonald contends that the evidence was insufficient to convict him under COCCA. In this regard, he asserts that the trial court should have imported the RICO requirements to

prove he participated in an "enterprise associated in fact," and that, applying the RICO standard for such an enterprise, the evidence was insufficient to support his COCCA conviction. *See* 18 U.S.C. § 1961(4). Second, McDonald contends that the jury instructions should have included additional requirements for establishing an "associated-in-fact enterprise" —that is, additional requirements that track those required under RICO. Because both of McDonald's contentions rest on our construction of "associated-in-fact enterprise" under COCCA, we turn to this overarching issue of statutory construction first; then we address the two specific contentions McDonald raises on appeal.

### A. Statutory Construction

#### 1. Legal Principles

¶ 9 We review issues of statutory interpretation de novo. *McCoy v. People*, 2019 CO 44, ¶ 37; *see also Doubleday v. People*, 2016 CO 3, ¶ 19. Our primary purpose in construing a statute is to "ascertain and give effect to the legislature's intent." *McCoy*, ¶ 37. First, we look to the language of the statute, giving words and phrases their plain meanings, reading them in context, and construing "them according to the rules of grammar and common usage."

*Doubleday*, ¶ 19. Next, we look to the purpose of the legislative scheme, reading the entirety of the statute to give consistent meaning to all its parts and avoiding constructions that would create illogical results. *Id.* at ¶ 20. Only if the statute is ambiguous may we look to other aids of construction like legislative history or canons of statutory construction. *Id.*

¶ 10    COCCA is modeled after — but not identical to — RICO. *People v. Chaussee*, 880 P.2d 749, 753 (Colo. 1994) (citing *Benson v. People*, 703 P.2d 1274, 1276 n.1 (Colo. 1985)). Because of their similarities, COCCA and RICO are "generally construed according to similar principles." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1076 (D. Colo. 2012). Indeed, "*[a]bsent a prior interpretation by our state courts*, federal case law construing [RICO] is instructive because COCCA was modeled after the federal act." *Ferris*, 867 P.2d at 46 (emphasis added) (citation omitted).

¶ 11    But Colorado courts have declined to extend federal interpretations of RICO to the construction of COCCA where there are differences — even slight differences — in statutory language. *See, e.g., Chaussee*, 880 P.2d at 759 (declining to follow federal interpretation of the definition of "pattern of racketeering," focusing

6

on the use of the word "requires" in RICO versus the word "means" in COCCA, because "for purposes of COCCA, we are persuaded that the construction adopted by the federal cases is not correct"); *James*, 40 P.3d at 47-48 (declining to follow the interpretation of "enterprise" under RICO); *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo. App. 1996) (departing from RICO's attorney fees regime because "there exists appropriate Colorado authority on this issue, and that authority is controlling"); *cf. Nicholas v. N. Colo. Med. Ctr., Inc.*, 902 P.2d 462 (Colo. App. 1995) (noting that the court is not bound to follow federal law in construing the state statutory scheme for anticompetitive conduct), *aff'd*, 914 P.2d 902 (Colo. 1996). And where another division of this court has construed COCCA, we should accord deference to that earlier interpretation. *See People v. Smoots*, 2013 COA 152, ¶ 20 ("We are not obligated to follow the precedent established by another division, even though we give such decisions considerable deference."), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.

¶ 12    With these principles in mind, we turn to the construction of "associated-in-fact enterprise" under COCCA.

### 2. Meaning of Enterprise Associated in Fact Under COCCA

¶ 13 As alluded to earlier, McDonald contends that we should follow the lead of federal courts interpreting RICO when we construe "associated-in-fact enterprise" under COCCA. Specifically, McDonald urges us to adopt the three-part test for an "association-in-fact enterprise" from *Boyle*, 556 U.S. 938, and *Turkette*, 452 U.S. 576. Under *Boyle* and *Turkette*, to secure a RICO conviction, federal prosecutors must demonstrate that the defendant was part of an enterprise that had "[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946; *id.* at 944-47 (favorably discussing and applying *Turkette*). McDonald asserts that these same three requirements should be imported into COCCA, and, therefore, the prosecution should be required to prove all three to establish that a defendant participated in an "associated in fact" enterprise under COCCA.

¶ 14 To address McDonald's argument, we first examine how each statute defines the term "enterprise." Under RICO, an "'enterprise' *includes* any individual, partnership, corporation, association, or other legal entity, and any union *or group of individuals associated*

*in fact although not a legal entity."* 18 U.S.C. § 1961(4) (emphasis added). And, under COCCA, an "'[e]nterprise' *means* any individual, sole proprietorship, partnership, corporation, trust, or other legal entity or any chartered union, association, *or group of individuals, associated in fact although not a legal entity . . . ."* § 18-17-103(2) (emphasis added).[1]

¶ 15    At first glance both provisions appear nearly identical: both define an "enterprise" and neither statute provides a separate definition of the meaning of "associated in fact." *Compare* 18 U.S.C. § 1961(4), *with* § 18-17-103(2). If we were writing on a clean slate, these similarities might steer us in the direction of following federal

---

[1] To more clearly illustrate the similarities and differences between COCCA's and RICO's definitions of "enterprise," what follows is the COCCA definition overlaid with the RICO definition. The ~~struck through~~ words are in RICO, 18 U.S.C. § 1961(4) (2018), but not in COCCA, § 18-17-103(2), C.R.S. 2019; the underscored words are in COCCA but not in RICO:

> "[E]nterprise" ~~includes~~ means any individual, sole proprietorship, partnership, corporation, trust, ~~association,~~ or other legal entity~~, and~~ or any chartered union, association, or group of individuals, associated in fact although not a legal entity, and shall include illicit as well as licit enterprises and governmental as well as other entities.

precedent in construing the meaning of this provision.  But we are not writing on a clean slate.  Nineteen years ago, a division of this court faced this very question — Should we follow the federal lead when it comes to construing the meaning of "enterprise" under COCCA?  It answered "no."  *See James*, 40 P.3d at 47-48.  We now take a closer look at *James*.

¶ 16     In *James*, the defendant, relying on the United States Supreme Court's decision in *Turkette*, argued the trial court erred by failing to instruct the jury concerning three "additional nonstatutory elements" he contended were required for finding the existence of an "enterprise" under COCCA.  *James*, 40 P.3d at 47.  The division in *James* rejected defendant's argument, declining to follow RICO when interpreting "enterprise" under COCCA.  *Id.* at 48.  In doing so, the *James* division relied on a subtle distinction between the definitions of "enterprise": RICO's definition uses the word "includes," whereas COCCA's definition uses the word "means."  *Id.* at 47.  Observing that "includes" is "a word that normally operates to extend rather than limit," while "means" is "a word of limitation," the division held that the General Assembly's use of "means" in COCCA indicated a "legislative intent to limit the

requirements . . . exclusively to those explicit in the statute." *Id.*
(citing *Chaussee*, 880 P.2d 749); *see Chaussee*, 880 P.2d at 757
(declining to extend additional federal requirements to the definition
of "pattern of racketeering" because the General Assembly used
words of "limitation" in the COCCA counterpart). In contrast, the
use of "includes" in RICO creates a less prescriptive definition,
permitting federal courts to elucidate what constitutes an enterprise
"associated in fact" under RICO. *James*, 40 P.3d at 47. Relying on
this distinction, the *James* division held COCCA's definition of an
"enterprise associated in fact" is complete, and it declined to expand
the definition to include the *Turkette* requirements, observing that
"[t]hese proposed requirements are beyond those mandated by the
explicit language of our statute." *Id.* at 48.

¶ 17    McDonald first contends that the continuing viability of
*James*, decided in 2001, is undermined by the Supreme Court's
2009 decision in *Boyle*. We are not persuaded. True, *Boyle* was
decided eight years after *James*, and *James* has not been revisited
with respect to this issue in the intervening decade. But *Boyle* did
not break new ground. Rather, it simply built on and further

explained the Court's holding and rationale articulated in *Turkette*.[2]
*See Boyle*, 556 U.S. at 942-51 (relying on *Turkette*). Simply put,
*Boyle* does not provide a basis for following RICO's interpretation of
"enterprise" that was not already in *Turkette* — and rejected in
*James*. Thus, we are not persuaded that the Court's intervening
decision in *Boyle* provides any independent grounds for departing
from *James*.

¶ 18    In the alternative, McDonald urges us not to follow the *James*
division for two related reasons. First, he contends that the *James*
division's interpretation of "enterprise" under COCCA violates equal
protection, therefore, it should be rejected under the canon of
constitutional doubt. Second, he contends that, even if the result
in *James* does not raise constitutional doubt, we should still decline
to follow it. We are not persuaded by either contention.

---

[2] In *Boyle v. United States*, 556 U.S. 938 (2009), the Court
repeatedly demonstrated its reliance on *United States v. Turkette*,
452 U.S. 576 (1981), through its use of phrases such as "we
explained in *Turkette*," *Boyle*, 556 U.S. at 944, 947; "[a]s we
succinctly put it in *Turkette*," *id.* at 946; "[w]e recognized in
*Turkette*," *id.* at 947; "[a]s we said in *Turkette*," *id.* at 948; and "[t]his
instruction properly conveyed the point we made in *Turkette*," *id.* at
951.

¶ 19 We disagree with McDonald that the *James* court's interpretation of "enterprise" creates constitutional doubt. The constitutional-doubt canon provides that, "when possible, statutes should be construed so as to avoid questions of their constitutional validity." *Adams Cty. Sch. Dist. No. 50 v. Heimer*, 919 P.2d 786, 790 (Colo. 1996); *see also, e.g., People v. Iannicelli*, 2019 CO 80, ¶ 22 ("[I]f a statute is capable of alternative constructions, one of which is constitutional, then the constitutional interpretation must be adopted." (quoting *People v. Zapotocky*, 869 P.2d 1234, 1240 (Colo. 1994))); *Perry Park Water & Sanitation Dist. v. Cordillera Corp.*, 818 P.2d 728, 732 (Colo. 1991) ("A construction of statutory language that creates doubts as to the constitutional validity of the legislation should be assiduously avoided if an alternative construction consistent with legislative intent is available.").

¶ 20 McDonald contends that the *James* division's construction of "enterprise" violates equal protection because there are no "reasonably intelligible standards" to distinguish a COCCA offense from a simple conspiracy, which has a far lesser penalty. *See People v. Marcy*, 628 P.2d 69, 74-75 (Colo. 1981) ("[E]qual protection of the laws is violated if different statutes proscribe the

13

same criminal conduct with disparate criminal sanctions.”).

*Compare* § 18-17-103(2), *and* § 18-17-104(3), *with* § 18-2-201, C.R.S. 2019.  We disagree.

¶ 21  “[I]f a criminal statute proscribes different penalties for identical conduct, a person convicted under the harsher penalty is denied equal protection unless there are reasonable differences or distinctions between the proscribed behavior.”  *People v. Stewart*, 55 P.3d 107, 114 (Colo. 2002).  However, the General Assembly “is entitled to establish more severe penalties for acts it believes have greater social impact and graver consequences.”  *Dean v. People*, 2016 CO 14, ¶ 16.

¶ 22  Though at issue in this appeal is the construction of an “enterprise” under COCCA — an element of the COCCA offense — in determining whether equal protection interests are implicated, we compare the overall COCCA offense to a simple conspiracy offense.  In doing so, we conclude that there are intelligible differences between each that justifies the higher penalty imposed by COCCA.

¶ 23  Convicting a defendant of a COCCA offense requires findings that an enterprise exists, that the defendant directly or indirectly

participated in the enterprise, and that this participation included at least two acts of racketeering activity. An act of racketeering means "to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit" offenses listed under section 18-17-103(5)(a) and (b). § 18-17-103(5). A simple conspiracy, however, is an inchoate offense where there was both an agreement to commit a crime with the intent to promote or facilitate its commission and an "overt act" in furtherance of the conspiracy, which does not need to be a criminal act in and of itself. § 18-2-201. Thus, because a "racketeering activity" includes "conspir[ing] to commit" one of the offenses listed in section 18-17-103(5)(a) and (b), it includes simple conspiracy.

¶ 24      There are, however, differences between the two offenses, even if the bar for finding an enterprise is no higher than finding a conspiracy. Simple conspiracy requires only one agreement and one overt act — an act which doesn't need to be a completed crime itself — while COCCA requires a finding that the defendant participated in at least two acts of racketeering. Although a conspiracy can be found based on one act of racketeering, because a "pattern of racketeering" must consist of at least two acts of

15

racketeering, a single conspiracy alone is not enough to demonstrate a *pattern* of racketeering activity as a prerequisite to pursue a COCCA conviction. *See Chaussee*, 880 P.2d at 758 (concluding that a pattern of racketeering activity can, at minimum, be established "simply by providing at least two acts of racketeering activity, as defined in section 18-17-103(5), that are *related to the conduct of the enterprise*").

¶ 25　　And, in this case, McDonald was charged with and convicted of committing three distinct, completed offenses — not just conspiracy. The People charged him with one count of theft, one count of criminal mischief, one count of aggravated motor vehicle theft, conspiracy to commit theft, conspiracy to commit criminal mischief, and conspiracy to commit aggravated motor vehicle theft (in addition to the COCCA charge). And, he was ultimately convicted of theft, aggravated motor vehicle theft, and criminal mischief in addition to one count of conspiracy to commit theft.

¶ 26　　Further, during trial, McDonald conceded that he had committed both theft and criminal mischief. A COCCA pattern of racketeering requires a finding of two predicate offenses. Thus,

16

given McDonald's concessions, at least one — if not two or more — predicate offenses were completed crimes, not just conspiracies.

¶ 27 Further, the greater penalties for COCCA offenses are grounded in the General Assembly's reasonable belief that organized crime has "greater social impact and graver consequences" than simple conspiracy. *Dean*, ¶ 16. The General Assembly's stated purpose for enacting COCCA was to "seek the eradication of organized crime in this state," in part through enhanced penalties. § 18-17-102, C.R.S. 2019. And by requiring a finding of a pattern of racketeering activities — that is, two or more criminal offenses, rather than only one — the General Assembly drew a boundary between simple conspiracy and the more concerning COCCA offense. Given the distinctions between COCCA and a simple conspiracy, as well as the particular facts before us, we conclude that the *James* division's interpretation of COCCA does not put COCCA in constitutional doubt.

¶ 28 Next, McDonald urges us to abandon the *James* division's interpretation of "enterprise." Although we have latitude to do so, we "give such decisions considerable deference." *People v. Frye*, 2014 COA 141, ¶ 12 (quoting *Smoots*, ¶ 20). While the rationale in

*James* is certainly subject to good-faith critique for hanging so much weight on the thin reed of the distinction between "includes" and "means," the opinion does provide a reasoned and thoroughly explained rationale for its holding. *See Williams v. Dep't of Pub. Safety*, 2015 COA 180, ¶ 143 (Berger, J., concurring in part and dissenting in part) ("[W]e should not easily cast aside a considered decision by a prior division of this court."); *see also Greyhound Lines, Inc. v. County of Santa Clara*, 231 Cal. Rptr. 702, 704 (Cal. Ct. App. 1986) ("We acknowledge we are not bound by an opinion of another District Court of Appeal, however persuasive it might be. We respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision.") (citation omitted).

¶ 29    In the final analysis, it is the absence of any action on the part of the General Assembly in the wake of *James* that tips the balance in favor of according deference to that division's holding. *See, e.g., Avalanche Indus., Inc. v. Clark*, 198 P.3d 589, 595 (Colo. 2008) ("We have consistently regarded the General Assembly's decision not to alter a statute when it makes amendments to related statutes 'as evidence of its acquiescence to the judicial construction of the terms

18

in those opinions.'" (quoting *City of Colorado Springs v. Powell*, 156 P.3d 461, 467 (Colo. 2007))), *overruled on other grounds by Benchmark/Elite, Inc. v. Simpson*, 232 P.3d 777 (Colo. 2010).

¶ 30    In the nineteen years since *James* was decided, the General Assembly has not amended the definition of "enterprise" in COCCA; in fact, the General Assembly has not amended the definition of "enterprise" since enacting COCCA in 1981. *Compare* § 18-17-103(2), *with* Ch. 229, sec.1, § 18-17-103(2), 1981 Colo. Sess. Laws 1016. And it's not because the General Assembly has not had occasion to amend COCCA during this interval. Indeed, since *James* was announced in 2001, the General Assembly has amended the definitions section of COCCA — section 18-17-103 — at least ten times, never once touching the definition of "enterprise." *See* § 18-17-103 source note (listing amendments to section 18-17-103 enacted during the 2006, 2009, 2010, 2012, 2013, 2014, 2018, and 2019 legislative sessions).

¶ 31    McDonald contends that most, if not all, amendments to COCCA were merely technical. We disagree. On five separate occasions, when the General Assembly established new criminal offenses, it added those new offenses to the list of crimes that are

19

"racketeering activities."[3] On each of these occasions, the General Assembly expanded the reach of COCCA to additional conduct without making the definition of "enterprise" more robust. This is a persuasive indication that the General Assembly approves of the construction of "enterprise" articulated in *James.* *See, e.g.,* *Rauschenberger v. Radetsky,* 745 P.2d 640, 643 (Colo. 1987) ("When a statute is amended, the judicial construction previously placed upon the statute is deemed approved by the General Assembly to the extent that the provision remains unchanged."); *Tompkins v. DeLeon,* 197 Colo. 569, 571, 595 P.2d 242, 243-44 (1979) (holding that where legislature amends statute and does not change section previously interpreted by settled construction, it is

---

[3] *See* Ch. 156, sec. 2, § 18-17-103(5)(b)(I), 2010 Colo. Sess. Laws 537 (adding three newly established human trafficking crimes as racketeering activities); Ch. 256, sec. 3, § 18-17-103(5)(b)(IV), 2010 Colo. Sess. Laws 1141 (adding the newly established crime of money laundering as a racketeering activity); Ch. 326, sec. 4, § 18-17-103(5)(b)(IV), 2009 Colo. Sess. Laws 1738-39 (adding the newly established crime of criminal possession of an identification document as a racketeering activity); Ch. 289, sec. 9, § 18-17-103(5)(b)(IV), 2006 Colo. Sess. Laws 1323-24 (adding eight newly established identity theft crimes as racketeering activities); Ch. 224, sec. 4, § 18-17-103(5)(b)(IV), 2001 Colo. Sess. Laws 769 (adding the newly established crime of trademark counterfeiting as a racketeering activity).

presumed the legislature agrees with the judicial construction);

*Rivera v. Am. Family Ins. Grp.*, 2012 COA 175, ¶¶ 13-15 (inferring legislative approval of a prior judicial construction of a statute from the General Assembly's decision to amend other parts of the statute being construed without modifying the provision at issue).

¶ 32     For these reasons, we reject McDonald's invitation to import RICO's requirements for an "enterprise associated in fact" into COCCA and, instead, adhere to *James*.

¶ 33     We now turn to the merits of the contentions McDonald advances on appeal.

### B.     The Evidence was Sufficient to Convict McDonald under COCCA

¶ 34     McDonald's first contentiontion is that the evidence was insufficient to convict him under COCCA because it did not establish all three federal requirements of an "associated in fact" enterprise.  *See Boyle*, 556 U.S. at 946 (applying the Court's earlier decision in *Turkette*).  Given the construction of COCCA discussed above, we must disagree.

¶ 35     We review a sufficiency of the evidence claim de novo — even if the claim is raised for the first time on appeal.  *McCoy*, ¶ 27.  In

21

conducting our review, we examine the record to "determine whether the evidence presented was sufficient in both quantity and quality to sustain a defendant's conviction." *Id.* at ¶ 63. And we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Perez*, 2016 CO 12, ¶ 24 (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)).

¶ 36 McDonald contends that the evidence was required to meet, but fell short of satisfying, the three-factor test set out in *Boyle* and *Turkette* — namely, that there was a "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.

¶ 37 But, as discussed in Part II.A, we adhere to the *James* division's interpretation of associated-in-fact enterprise and decline to import those federal requirements from RICO into COCCA. Thus, the evidence needed only satisfy the requirements contained within

22

the four corners of section 18-17-103(2), as explained in *James*. We conclude that it did.

¶ 38    COCCA requires that an enterprise consist of at least one more person or entity other than the defendant. *James*, 40 P.3d at 46. And the "enterprise need not be separate and distinct from the racketeering activity." *People v. Cerrone*, 867 P.2d 143, 149 (Colo. App. 1993), *aff'd*, 900 P.2d 45 (Colo. 1995).

¶ 39    The evidence presented at trial satisfies these requirements. First, Detective Shannon Jones testified that McDonald confessed that he and the three other men stole a minivan, used that vehicle to drive to the mall, and planned to steal Rolexes from the jewelry store. Second, another witness testified that video surveillance footage of the store showed two men — one of whom he identified in the courtroom as McDonald — breaking into a case of Rolex watches. Third, the People submitted body camera footage from an arresting officer, in which McDonald stated that he worked with three other men. This evidence was sufficient to support the jury's findings that McDonald worked with at least one other person, engaged in at least two predicate acts of racketeering — the theft of the minivan and the robbery of the jewelry store — and that this

group was an enterprise of four men formed to carry out this robbery.

¶ 40    Although McDonald contends there was no evidence of structure, organization, or unity of purpose among the four men, this is not required to satisfy COCCA. *See James*, 40 P.3d at 48 ("[W]e decline to impose additional requirements for proof of the existence of an enterprise. These proposed requirements are beyond those mandated by the explicit language of our statute."). McDonald is correct that federal law requires that "[s]omething more must be found — something that distinguishes RICO enterprises from ad hoc one-time criminal ventures." *United States v. Cianci*, 378 F.3d 71, 82 (1st Cir. 2004). But under COCCA, a criminal enterprise need not have some broader purpose beyond commission of the crime itself. *People v. Randell*, 2012 COA 108, ¶ 74; *cf. People v. McGlotten*, 166 P.3d 182, 190 (Colo. App. 2007) ("COCCA broadly defines the term 'enterprise' . . . ."). Accordingly, we conclude that sufficient evidence supports McDonald's COCCA conviction.

## C. The Trial Court Did Not Err in Issuing its Jury Instruction for "Associated in Fact"

¶ 41 McDonald next contends that the trial court erred because the jury instructions did not include RICO's requirements for an "associated-in-fact enterprise." Specifically, he asserts that the trial court should have provided supplemental instructions consistent with *Boyle* and *Turkette*. We disagree.

¶ 42 We first review the jury instructions de novo to determine whether they accurately informed the jury of the applicable law. *People v. Mendenhall*, 2015 COA 107M, ¶ 14 (citing *People v. Lucas*, 232 P.3d 155, 162 (Colo. App. 2009)). "Generally, instructions that accurately track the language of applicable statutes and pattern instructions are sufficient." *People v. Jackson*, 2018 COA 79, ¶ 64 (citing *People v. Gallegos*, 260 P.3d 15, 26 (Colo. App. 2010)) (*cert. granted* July 30, 2019). In contrast, whether to give additional instructions, including definitions of undefined terms, lies within the trial court's sound discretion, *Fain v. People*, 2014 CO 69, ¶ 17, and we will not reverse on this basis "absent manifest prejudice or a clear showing of abuse of discretion," *People v. Rogers*, 220 P.3d 931, 936 (Colo. App. 2008).

¶ 43    Here, the trial court's instruction on the elements of the COCCA charge tracked the applicable statute as well as the pattern jury instruction. And the definition of "enterprise" that the trial court gave to the jury tracked the definition of an "enterprise" set forth in section 18-17-103(2) — and McDonald doesn't contend otherwise. Thus, we conclude that the trial court provided the jury with legally accurate instructions. *Jackson*, ¶¶ 64, 66. But that doesn't end our inquiry; we must also consider whether the trial court abused its discretion in declining to give additional instructions.

¶ 44    McDonald contends that the trial court should have given the jury additional instructions on the meaning of "enterprise" and "associated in fact." McDonald's tendered additional instructions in this regard read, as follows:

> An enterprise also includes a group of people who associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people does not have to be a legally recognized entity, such as a partnership or corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose.

26

> This group of people must have (1) a common
> purpose; and (2) an ongoing organization,
> either formal or informal; and (3) personnel
> who function as a continuing unit.
>
> The "[a]ssociation in fact" must be distinct
> from pattern of racketeering activity.

¶ 45    We conclude that the trial court did not abuse its discretion by declining to give McDonald's tendered additional instructions for two independent reasons.

¶ 46    First, the tendered and rejected instructions were not accurate statements of the law. The tendered instructions were based on *Boyle*'s and *Turkette*'s interpretation of RICO, and, as discussed above in Part II.A, we reject this interpretation of COCCA's definition of enterprise. *See James*, 40 P.3d at 47-48. And because the tendered instructions misstated the law, the trial court did not abuse its discretion by declining to include them in the instructions it gave to the jury. *See People v. Lopez*, 2018 COA 119, ¶¶ 39-40 (holding that a trial court did not err by declining to give a proposed definitional instruction when the proposed instruction misstated the law); *People v. Harris*, 2016 COA 159, ¶ 97 ("It is within the sound discretion of the trial court to determine whether additional

27

jury instructions *that properly state the law* should be submitted.") (emphasis added).

¶ 47 Second, we reject the notion that the trial court abused its discretion by declining to give the jury further guidance on the meaning of "associated in fact" — a phrase not specifically defined in COCCA. A trial court has broad discretion when it comes to defining undefined terms. *Harris*, ¶ 97. "When a term, word, or phrase in a jury instruction is one with which reasonable persons of common intelligence would be familiar, and its meaning is not so technical or mysterious as to create confusion in jurors' minds as to its meaning, an instruction defining it is not required." *Lopez*, ¶ 41 (quoting *Harris*, ¶ 98). There is nothing from the events during trial or the case law that would have alerted or indicated to the trial court that the phrase "associated in fact" is sufficiently complicated that it required further definition. *See McGlotten*, 166 P.3d at 190 ("Although COCCA's definition of 'enterprise' is broad, it is not so vague that persons 'of common intelligence must necessarily guess at its meaning.'") (citations omitted); *cf. Mendenhall*, ¶ 24 ("It is the legislature's prerogative to define criminal offenses; absent constitutional constraints, . . . it is not the proper function of a

court to limit the reach of a criminal statute because the court thinks the statute reaches too broadly." (citing *People v. Manzo*, 144 P.3d 551, 554 (Colo. 2006))); *James*, 40 P.3d at 46 (indicating that it was only the term "individual" in the definition of enterprise that required further definition). For this reason too, the trial court did not abuse its discretion by declining to provide additional instructions.

¶ 48 McDonald argues that because the jury asked a question during its deliberations about the meaning of "associated in fact," that is proof positive that an additional instruction on the meaning of that phrase was required. But the fact that the jury asked a question during its deliberations does not change our assessment of whether the trial court abused its discretion during the jury instruction conference by refusing to give the jury further guidance.

¶ 49 It is true that the jury did ask the court the following question during its deliberations: "What is an 'enterprise' of a group of individuals 'associated in fact'?"

¶ 50 The trial court conferred with counsel about how to respond to the jury's question. McDonald's counsel told the court:

My response is simply that, unfortunately, they have all the law that they have and there's nothing further we can give. These two cases [*James* and *McGlotten*] don't do anything but say that it's already defined, essentially. So I don't think there's really much to say except that this is all the law we give. I don't think we can do anything beyond that.

¶ 51    After conferring with counsel, the court proposed the following response to the jury: "The court has instructed you on all the legal definitions applicable to this matter." After defense counsel said, "Yeah, that's fine,"[4] the court submitted its proposed response to the jury in writing.

---

[4] The Attorney General contends that counsel's response is a waiver of McDonald's contention that the trial court erred in not giving his tendered additional instructions. While counsel may well have waived the argument that the trial court erred in the manner that it answered the jury's question, that issue is not raised on appeal and, therefore, not before us. And we reject the Attorney General's contention that counsel's statement waived McDonald's previously preserved request that the court give his tendered instructions. *See People v. Tardif*, 2017 COA 136, ¶ 10 ("An alleged instructional error is preserved if the defendant tenders the desired relevant instruction even if the defendant does not object or otherwise raise the issue during the jury instruction conference."); *People v. Pahl*, 169 P.3d 169, 183 (Colo. App. 2006) (holding that tendering an alternative jury instruction is sufficient to preserve instructional error for appeal). Instead, we conclude that, because counsel made a "plain and reasonable assertion" of his right to have his tendered instructions given to the jury, the issue is preserved. notwithstanding counsel's colloquy regarding the jury's question. *Deleon v. People*, 2019 CO 85, ¶ 24.

¶ 52　While this exchange does indicate that the jury ultimately sought further guidance on the meaning of "associated in fact," it does not meaningfully inform our analysis regarding whether the trial court was required to include additional guidance in the first instance. *See, e.g.*, *Leonardo v. People*, 728 P.2d 1252, 1254-56 (Colo. 1986) (stating that whether a trial court was required to provide further guidance in response to a jury's question is a separate issue from the "adequacy of the original instructions given"). That question turns on the difficulty in according such terms their plain meanings in the absence of further guidance. And, as discussed above, the trial court acted within its discretion by giving the instructions it gave.

### III.　Conclusion

¶ 53　For the reasons set forth above, we affirm.

JUDGE TERRY concurs.

JUDGE BERGER concurs in part and dissents in part.

JUDGE BERGER, dissenting.

¶ 54     I am convinced that we should depart from *People v. James*, 40 P.3d 36 (Colo. App. 2001), and instead interpret the enterprise "associated in fact" element of the Colorado Organized Crime Control Act (COCCA), section 18-17-103(2), C.R.S. 2019, consistently with the United States Supreme Court's definition of the identical term in the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961(4) (2018).

¶ 55     Before *James*, the United States Supreme Court stated that an enterprise under RICO is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). *James* rejected this interpretation and interpretations of other federal courts. *James*, 40 P.3d at 47-48. Eight years later, in *Boyle v. United States*, 556 U.S. 938 (2009), the Supreme Court further held that to establish the existence of an "association-in-fact enterprise" under RICO, the prosecutor must prove that the defendant was part of an enterprise that had (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit the associates to pursue the enterprise's purpose. This three-part test

32

seeks to, and usually will, distinguish an impulsive, run-of-the-mill crime from criminal liability under RICO.

¶ 56    If my disagreement with the majority were only based on two different, but reasonable, readings of a criminal statute, I would defer to the division's decision in *James*. *In re Estate of Becker*, 32 P.3d 557, 563 (Colo. App. 2000), *aff'd sub nom. In re Estate of DeWitt*, 54 P.3d 849 (Colo. 2002). While "we should not easily cast aside a considered decision by a prior division of this court," *Williams v. Dep't of Pub. Safety*, 2015 COA 180, ¶ 143 (Berger, J., concurring in part and dissenting in part), "one panel is not obligated to follow the precedent established by another," *Becker*, 32 P.3d at 563. Because the interests at play here far transcend the ordinary, important considerations underpinning the deference we typically afford other divisions of this court, I would depart from *James*.

¶ 57    First, I have serious doubts whether *James* was correctly decided. As the majority acknowledges, the minor differences between the relevant statutory language in COCCA and RICO are a "thin reed" on which to reject relevant holdings of the Supreme Court. Even acknowledging the subtle language differences

between COCCA and RICO, I have trouble understanding how those differences bear at all on the question of whether Colorado courts should reject the three subparts of the federal definition of an associated-in-fact enterprise.[1]

¶ 58    Second, the United States Supreme Court did not impose the three-part *Boyle* test that McDonald asks us to adopt until *after* the division's opinion in *James.* The majority discounts this fact, stating that *Boyle* relied heavily on the Supreme Court's pre-*James* decision in *Turkette.* But *Turkette* did not squarely address the meaning of "associated in fact." *Boyle* did, and we should follow its reasoning and apply its three-part test here.

¶ 59    Third, the reasons underlying the Supreme Court's construction of the associated-in-fact enterprise element of RICO are very important when viewed through the lens of the criminal justice system. While the Supreme Court has rejected the

---

[1] I recognize that in *People v. Chaussee*, 880 P.2d 749 (Colo. 1994), the Colorado Supreme Court seized on a wording difference between COCCA and RICO to conclude that establishing a pattern of racketeering was less demanding under COCCA than under RICO. But that wording difference affected whether or not particular conduct was proscribed by COCCA, rather than whether complex terms contained in COCCA needed further definition to enable juries to do their job.

proposition that RICO applies only to the type of organized crime frequently encountered in movies and television shows, *Boyle*, 556 U.S. at 950-51 (collecting cases), it is equally true that neither Congress nor the Colorado General Assembly reasonably intended to transform "run-of-the-mill" crimes into the much more harshly punished violations of RICO and COCCA.

¶ 60 Fourth, we place awesome responsibilities on jurors in criminal cases. But judges have an equal responsibility — to provide the jurors with sufficient guidance to understand the task imposed on them. Merely instructing a jury that one of the elements of COCCA is that the defendant engaged in an "enterprise," which may consist of "individuals . . . associated in fact," gives lay jurors insufficient guidance to determine whether the elements of the crime have been proved beyond a reasonable doubt. Without further definition, I don't know what "associated in fact" means, and I think it is presumptuous to assume that lay jurors are able to meaningfully understand and then apply that undefined term. (Indeed, in this very case, questions by the jury during deliberations demonstrate the insufficiency of the definition of an enterprise and the *James* rationale better than any of my words.) Is

35

it enough that two persons who engage in criminal conduct violative of more than one statute meet each other minutes before commission of a crime and decide to commit the crime together? Under *James*, and the majority's holding, that is probably enough. That makes little sense to me.

¶ 61 Fifth, particularly in the years since *James*, the Colorado Supreme Court has made clear its strong preference for uniformity between similar federal and state court rules, constitutional provisions, and (by extension) statutes. For instance, in *Warne v. Hall*, 2016 CO 50, ¶ 2, the supreme court stated its preference to "maintain uniformity in the interpretation of the federal and state rules of civil procedure" and its "willingness to be guided by the Supreme Court's interpretation of corresponding federal rules whenever possible." To be sure, we are not bound by the United States Supreme Court's construction of a federal statute when we interpret a Colorado statute, but that does not mean that we should not carefully consider the Supreme Court's holdings. *Id.* When "the provisions and purposes of our statute parallel those of the federal enactments, such federal authorities are highly persuasive." *Cagle v. Mathers Family Tr.*, 2013 CO 7, ¶ 19 (citation omitted).

¶ 62     Sixth, as I read the majority opinion, despite the majority's

skepticism of *James*' reasoning and result, the majority relies on

the rule of construction that the legislature is deemed to have

acquiesced in a court's prior construction of a statute when the

legislature amends the statute without disturbing the prior court

ruling.  *Supra* ¶ 29 (majority opinion) (citing *Avalanche Indus., Inc.*

*v. Clark*, 198 P.3d 589, 594 (Colo. 2008), *overruled on other grounds*

*by Benchmark/Elite, Inc. v. Simpson*, 232 P.3d 777 (Colo. 2010)).

¶ 63     Rules of statutory construction certainly are useful to enable

courts to do their jobs construing unclear statutes.  *See, e.g.,*

*Frazier v. People*, 90 P.3d 807, 810-11 (Colo. 2004).  But we should

also recognize that rules of construction have their limits.  One

need only read the rules of construction treatise authored by former

Supreme Court Justice Antonin Scalia and Professor Bryan Garner

to realize that for virtually every recognized rule of construction,

there is another one that leads to precisely the opposite result.  *See*

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation*

*of Legal Texts* (2012).

¶ 64     More to the point, the majority's reliance on this rule of

construction assumes that after *James* was decided, someone

employed by the General Assembly immersed himself or herself in the many complexities of RICO and COCCA law and made a considered judgment that *James* was correctly decided and that the United States Supreme Court's later interpretation in *Boyle* of a nearly identical federal statute should be rejected. With respect both to my colleagues and the General Assembly, I think this is a very unrealistic assumption.

¶ 65    For all these reasons, I would hold that the COCCA term "associated in fact" has the same meaning and requires the same sub-elements as under RICO. Because a jury, not a judge, must make these subsidiary findings, it follows that McDonald's COCCA conviction cannot stand. But I also conclude, given the extremely deferential standard of review that we apply to challenges of the sufficiency of the evidence, that the evidence here was sufficient for the jury to make the required COCCA findings. *People v. Hard*, 2014 COA 132, ¶ 41. Therefore, I would remand for a new trial on the COCCA charge and reject McDonald's contention that double jeopardy bars a retrial. *Id.* With respect, I dissent from the majority's contrary disposition.